N. Kane Bennett Ct. 20988
Aeton Law Partners LLP
101 Centerpoint Drive, Suite 105
Middletown, CT 06457
T: (860) 724-2163
F: (860) 724-2161
NKB@aetonlaw.com

David D. Lin, Esq. (admitted *pro hac vice*)
Justin Mercer, Esq. (admitted *pro hac vice*)
LEWIS & LIN, LLC
45 Main Street, Suite 608
Brooklyn, NY 11201
Tel: (718) 243-9323
Fax: (718) 243-9326
david@ilawco.com
justin@ilawco.com

*Counsel for Defendant Yves Darbouze*

**THE UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| TICKETNETWORK, INC., <br><br> Plaintiff <br><br> v. <br><br> YVES DARBOUZE DBA CHARGED.FM <br><br> Defendant | Civil Action No.: 3:15-cv-00237-VAB |

**DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S (i) APPLICATION FOR PREJUDGMENT REMEDY, (ii) MOTION FOR DISCLOSURE OF ASSETS AND (iii) MOTION FOR LEAVE TO TAKE DEPOSITION PRIOR TO SCHEDULED PREJUDGMENT REMEDY HEARING**

## INTRODUCTION

In the interest of brevity, Defendant Yves Darbouze, misidentified in the caption herein as "Yves Darbouze dba Charged.fm," ("Mr. Darbouze" or "Defendant") refers the Court to Defendant's Memorandum of Law in Support of Defendant's Motion to Dismiss and Motion to Stay (the "Motion to Dismiss"), which contains most of the salient facts concerning the nature and stage of these proceedings.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Most of the relevant facts are stated in Defendant's Motion to Dismiss. Additional facts that address claims and contentions raised in Plaintiff's Application for Prejudgment Remedy ("PJR Application"), Motion for Disclosure of Assets ("Disclosure Motion") and Motion for Leave to Take Defendant's Deposition Prior to Scheduled Prejudgment Remedy Hearing ("Discovery Motion," collectively with the PJR Application and Disclosure Motion, the "Application") are stated below.

On or about April 28, 2014, TicketNetwork and CHARGED.fm entered into an agreement entitled "TicketNetwork Data Sharing Agreement for Mercury Web Services" (the "Agreement"). The Agreement also contains an arbitration clause:

> Arbitration. Any controversy or claim arising out of or relating to this contract, or any alleged breach thereof, shall be resolved through binding arbitration in the jurisdiction of TicketNetwork's headquarters, Hartford County, Connecticut, and administered by the American Arbitration Association in accordance with its Commercial Arbitration Rules including the Optional Rules for Emergency Measures of Protection.

Purportedly pursuant to the Agreement, on or about January 21, 2015, Plaintiff filed a Demand for Arbitration with the American Arbitration Association against Mr. Darbouze (the "Demand"). *See* Motion to Dismiss at Exhibit A; *see also* [DE 1 at 9, ¶ 1]. The Demand is a

one-page document. *Id.* Under the section "Claim Description" it reads "Breach of contract under Data Sharing Agreement." *Id.* Attached to the Demand is a copy of the agreement entitled "TicketNetwork Data Sharing Agreement for Mercury Web Services," dated April 28, 2014 (i.e., the "Agreement"). *See* Motion to Dismiss at Exhibit A; *see also* [DE 1]. Notwithstanding Plaintiff's awareness that Charged.fm is a Nevada entity (one named Plot Commerce), the Demand lists the parties to the arbitration as "TicketNetwork, Inc." as claimant and "Yves Darbouze d/b/a Charged.FM" as respondent. *See* Demand.

On the same day the Demand was filed, January 21, 2015, Plaintiff filed the PJR Application and the Disclosure Motion in Connecticut Superior Court. *see also* [DE 1]. As with the Demand, the Application and the Motion for Disclosure of Assets named the defendant therein as "YVES DARBOUZE d/b/a CHARGED.FM." *Id*. In the Application, Plaintiff states "Yves Darbouze signed the Agreement on behalf of his d/b/a Charged.fm." [DE 1 at 15, ¶ 4].

The preamble to the Application states, in relevant part:

> "Pursuant to Connecticut General Statutes § 52-278a *et seq.* and **§ 52-422**, [Plaintiff], hereby moves for a prejudgment remedy against the defendant Yves Darbouze d/b/a Charged.fm ('Defendant')."

[DE 1](emphasis added).

Plaintiff's Application further states that "Plaintiff has commenced an arbitration against Defendant which is currently pending before the American Arbitration Association." *Id.* Both the Disclosure Motion and Discovery Motion rely upon the existence of PJR Application, and thus the determination and/or disposition of same should affect the Court's ruling on the collective Application.

Rule 37 of the AAA's Commercial Arbitration Rules (a copy of which is annexed hereto as **Exhibit A**) provides, "[t]he arbitrator may take whatever interim measures he or she deems

necessary, including injunctive relief and measures for the protection or conservation of property. . . ." Moreover, Rule 38 of the AAA's Rules are "the Optional Rules for Emergency Measures of Protection," as referenced in Plaintiff's Agreement. *See* Exhibit A; Agreement at 4. Rule 38 provides, in relevant part, "A party in need of emergency relief prior to the constitution of the panel shall notify the AAA and all other parties in writing of the nature of the relief sought and the reasons why such relief is required on an emergency basis." Exhibit A. Rule 38 further provides that after receipt of such a notice, an arbitrator will be appointed within 24 hours and hearing will be scheduled within 48 hours, such that:

> The emergency arbitrator shall have the authority vested in the tribunal under Rule 7, including the authority to rule on her/his own jurisdiction, and shall resolve any disputes over the applicability of this Rule 38.
>
> (e) If after consideration the emergency arbitrator is satisfied that the party seeking the emergency relief has shown that immediate and irreparable loss or damage shall result in the absence of emergency relief, and that such party is entitled to such relief, the emergency arbitrator may enter an interim order or award granting the relief and stating the reason therefore.

Exhibit A, AAA Commercial Rules of Arbitration, R-38.

As stated in Defendant's Motion to Dismiss, Mr. Darbouze is not a proper party to the arbitration. However, assuming *arguendo* that the arbitration was properly instituted, Plaintiff has not sought interim orders or emergency measures of protection from the AAA, even though these remedies could be used to accomplish the purported goal of the Application before this Court.

**ARGUMENT**

As a threshold matter, Defendant opposes Plaintiff's Application for the bases stated in Defendant's Motion to Dismiss: Plaintiff sued the wrong party, as Defendant is not a party to the Agreement, nor is he subject to personal jurisdiction in Connecticut.

Notwithstanding the personal jurisdictional issues raised in Defendant's motion to dismiss, this proceeding in aid of arbitration under General Statutes § 52-422 should also be dismissed because Plaintiff has not alleged facts sufficient to support that statute's threshold requirement of "necessity" for judicial ancillary relief. Essentially, Plaintiff drafted an agreement that required it to submit disputes to arbitration in accordance with the AAA's Commercial Arbitration Rules, including the AAA's Optional Rules for Emergency Measures of Protection, yet to date, it has not sought any of those remedies it specifically contracted for. Plaintiff's failure to do so demonstrates the requested *pendent lite* relief is not absolutely necessary and there is no irretrievable loss that the Plaintiff will suffer so as to circumvent the AAA procedures it contracted for. Likewise, there is no good cause to compel disclosure of Defendant's assets nor require him to engage in discovery prior to this Court's determination of the threshold issues under the PJR Application, much less before a Rule 26 conference.

**I.     The Court should deny and/or dismiss the PJR Application**

    **A.     Legal Standard for an Application for an Order *Pendente Lite***

In *New England Pipe Corporation v. Northeast Corridor Foundation*, the Connecticut Supreme Court made clear that judicial intervention, in lieu of resort to the arbitral process, is permissible "only in extraordinary circumstances" where a plaintiff's "rights will be lost irretrievably in the absence of judicial intervention." 271 Conn. 329, 857 A.2d 348 (2004).

The explicit language of § 52-422 dictates that a threshold issue of "necessity for judicial relief/intervention" must be addressed for any application under the statute, "even as to prejudgment remedies." *See* Conn. Gen.Stat. § 52-422 ("At any time before an award is rendered pursuant to an arbitration under this chapter, [the court] upon application of any party to the arbitration, may make forthwith such order or decree, issue such process and direct such proceedings *as may be necessary to protect the rights of the parties* pending the rendering of the award and to secure the satisfaction thereof when rendered and confirmed.") (emphasis added); *see, e.g., Yankwitt v. Silver, Golub & Teitell, LLP*, No. FSTCV145014245S, 2014 WL 7462562, at *1 (Conn. Super. Ct. Nov. 19, 2014); *Everspeed Enterprises Ltd. v. Skaarup Shipping Int'l.*, 754 F. Supp. 2d 395, 406 (D. Conn. 2010); *Savanna Investors, LLC v. Vaughn*, No. X08CV084012896S, 2008 WL 4021333, at *3 (Conn. Super. Ct. July 30, 2008) ("[W]hen the prejudgment remedy is sought in aid of arbitration, there is additionally a threshold requirement of necessity which *New England Pipe* defines to include a component of necessity for judicial intervention into the domain of the preferred forum-the arbitration panel."); *see also Bahrain Telecommunications Co. v. Discoverytel, Inc.*, 476 F. Supp. 2d 176, 187 (D. Conn. 2007).

In *New England Pipe,* the Connecticut Supreme Court also held that Conn. Gen.Stat. § 52-422's language "*as may be necessary*" evidenced the Connecticut legislature's intent to empower courts to issue *pendente lite* orders only when such relief was "absolutely required," "essential," or "indispensable" to "protect" or "safeguard" the rights of a party to a pending arbitration. *New England Pipe,* 857 A.2d at 353-354; *Bahrain*, 476 F. Supp. 2d at 187.

Furthermore, not only does this threshold determination precede any inquiry into the issue of probable cause, but "the burden is on the party seeking judicial relief to establish that its 'rights will be lost irretrievably in the absence of judicial intervention,' not on the opposing party

to establish the sufficiency or availability of appropriate or adequate remedies." *Yankwitt,* 2014 WL 7462562, at *3 (*citing New England Pipe*, 857 A.2d at 353-354); *see Savanna Investors, LLC*, 2008 WL 4021333, at *3. When the evidence established that the threshold factor of necessity is absent, an evidentiary hearing to determine probable cause is not required. *Id.*; *Savanna Investors, LLC*, 2008 WL 4021333, at *5.

**B. Plaintiff's Application fails to meet the rigorous, threshold requirement of "necessity."**

Plaintiff TicketNetwork's Application for a prejudgment remedy in aid of arbitration identifies Connecticut General Statutes § 52-422 as authority for the application.

However, while TicketNetwork initiated an arbitration against Defendant individually, it has not sought the relief it seeks herein in that arbitration, even though it had and has the ability to do so. Effectively, Plaintiff has not exhausted its remedies in the arbitration proceeding to affirmatively establish that its rights will be lost irretrievably in the absence of intervention by this Court. Instead, this Application is a needless imposition on the valuable resources of this Court and unnecessarily bifurcates issues that should be decided by the arbitrator in the first instance.

The issue is not whether the Plaintiff can establish probable cause for its claim (which Defendant submits it cannot, because, *inter alia*, it has sued the wrong party). Rather, the threshold issue is whether Plaintiff can prove its "rights will be lost irretrievably in the absence of judicial intervention," thus warranting circumvention of the arbitral process it contracted for. Notably, nowhere in the Application does Plaintiff mention "necessity" nor any exigent need for the requested prejudgment remedy. By only referencing the statutes and mentioning probable cause, Plaintiff's Application makes no effort to allege any facts or posit any evidence to support a finding that the AAA processes are unavailable or insufficient to protect its rights.

As set forth above, Defendant Yves Darbouze has established (i) the availability of the AAA's interim and emergency measures of protection; (ii) Plaintiff's failure, to date, to seek to avail itself of the benefit of such measures and (iii) the absence of any evidence of any harm to Plaintiff's rights by requiring it to seek interim and/or emergency orders in the AAA. As the courts in *Yankwitt* and *Savanna Investors* held, the failure of Plaintiff to seek relief from the AAA first, coupled with the availability of such measures, requires denial and or dismissal of the Application. *Yankwitt,* 2014 WL 7462562, at *3 (denying prejudgment remedy of attachment and holding "there might be a basis for claiming necessity with respect to a prejudgment remedy, but . . . there was no indication that plaintiff had even taken the threshold step of applying for any form of relief"); *Savanna Investors, LLC*, 2008 WL 4021333, at *6 ("[T]he plaintiff has failed to make the requisite showing under § 52-422 and the rule of *New England Pipe* that this case presents an extraordinary situation calling for judicial intervention in the arbitration process or that plaintiff's rights . . . would be irretrievably lost by having to present those claims for interim relief to the arbitration panel which is under Connecticut public policy the preferred tribunal to handle them.").

Moreover, the resolution of the threshold issue of necessity best serves the interest of judicial economy and the purposes of Plaintiff's arbitration agreement. By disposing of this preliminary issue, the Court will avoid a needless, extended hearing on probable cause, weighing the parties' claims and defenses along with the evidentiary issues generated by Plaintiff's requested pre-Rule 26 conference discovery. For instance, in conjunction with this Application, Plaintiff also seeks to depose Defendant herein in advance of a hearing (which Defendant posits is unnecessary). Indeed, the scope of proper discovery, availability of disclosure methods and limitations on the breadth and expense of discovery is one of the central tenets of arbitration that

Plaintiff contracted for. Likewise, a principal benefit of arbitration is limiting public disclosure of confidential and/or proprietary information. Plaintiff's Agreement similarly had a confidentiality clause. Plaintiff apparently intends to attempt to try its case twice – once, in public, in this Court on the Application and again before the arbitrator on the Demand (both against the wrong party in each venue). By addressing the threshold issue of necessity, the Court will dispense with the wasteful exercise of plodding through Plaintiff's cause of action, the same cause of action that will be decided in arbitration. Nor will it be necessary for the Court to examine the scope of testimony that Plaintiff seeks to elicit from Defendant or present at a hearing on probable cause, which may implicate the confidentiality provision of the Agreement itself.

### C. Defendant asserts all other available defenses and offsets

In addition to the above, Defendant objects to the proposed prejudgment remedy because Defendant has substantive defenses and set-offs even if the claim were properly presented to the correct party. Because Plaintiff brought this claim against the wrong party, and all of the reasons detailed above, Defendant also requests that Plaintiff have to post a substantial bond in accordance with Connecticut General Statutes § 52-278d to secure any damages that may result from the requested prejudgment remedy. Further, if a prejudgment remedy is granted, Defendant requests the option to substitute a bond for the remedy sought and/or to demonstrate that there is no available property properly subject to such prejudgment remedy or that any property is otherwise exempt from attachment. Finally, Defendant requests a hearing to contest the Application.

In sum, there is no absolute necessity for the PJR Application. Therefore, the Court should deny or dismiss the Application in its entirety.

## II. The Court should deny the Disclosure Motion

Similarly, there is no absolute necessity for the Disclosure Motion. Plaintiff's Disclosure Motion is remarkably silent as to why such disclosure is necessary beyond a cursory reference to the Connecticut General Statute under which it proceeds. Simply put, Plaintiff makes no showing that disclosure of Defendant's assets is "absolutely essential to protect its rights," especially in advance of a probable cause determination (which itself is subordinate to the threshold issue of "necessity" [see above]). *See, e.g.*, *Bahrain*, 476 F. Supp. 2d at 187-88 ("Nor need this Court decide at this time whether Connecticut law permits a court, over objection, to order disclosure of assets in advance of a probable cause determination. For even if that were possible under Connecticut law, since Batelco is proceeding under Conn. Gen.Stat. § 52-422, it must nonetheless show that the relief it seeks is "necessary" or "absolutely essential" to protect its rights. And to date, Batelco has made no showing that it requires such an order in advance of the hearing . . . Indeed, it would demean the concept of 'necessity' if Batelco were entitled to immediate disclosure of assets merely because it wishes to know whether it is worth its while to pursue the hearing that it has demanded.").

Moreover, as stated in support of Defendant's Motion to Dismiss, Defendant Yves Darbouze does not have any property or interest in any property in Connecticut. The Disclosure Motion serves as an unwarranted and unnecessary intrusion into Defendant's assets, when there is no contractual obligation between the parties, much less a need for the information now. As a result, the Court should deny Plaintiff's Disclosure Motion.

**III.     The Court should deny the Discovery Motion**

The bases for denial of the Discovery Motion are identical as stated above: Plaintiff sued the wrong party, as Defendant is not a party to the Agreement, nor is he subject to personal jurisdiction in Connecticut.  Moreover, Plaintiff's Discovery Motion is threadbare as to what good cause it has to circumvent both Rule 26(d)(1) of the Federal Rules of Civil Procedure ("[a] party may not seek discovery from any source before the parties have conferred as required by Rule 26(f)") and AAA's Rules (where the arbitrator determines the scope, breadth and methods of discovery).  As a result, the Court should deny Plaintiff's Discovery Motion outright.

**CONCLUSION**

Based on the foregoing, the Court should deny and/or dismiss Plaintiff's Application in its entirety because Plaintiff has failed to prove and cannot prove that judicial intervention herein is essential or absolutely required to prevent irretrievable loss of its rights. Similarly, the portions of Plaintiff's Application seeking disclosure or discovery must be denied for lack of good cause to pursue same at this time.

Dated: March 12, 2015

        THE DEFENDANT,
        YVES DARBOUZE
        BY HIS ATTORNEYS:

        /s/ N. Kane Bennett
        N. Kane Bennett Ct. 20988
        Aeton Law Partners LLP
        101 Centerpoint Drive, Suite 105
        Middletown, CT 06457
        T: (860) 724-2163
        F: (860) 724-2161
        NKB@aetonlaw.com

        LEWIS & LIN, LLC

        /s/ David D. Lin
        David D. Lin, Esq.
        Justin Mercer, Esq.
        45 Main Street, Suite 608
        Brooklyn, NY 11201
        Tel: (718) 243-9323
        Fax: (718) 243-9326
        Email: David@iLawco.com
                  Justin@iLawco.com

Exhibit A

## R-36. Inspection or Investigation

An arbitrator finding it necessary to make an inspection or investigation in connection with the arbitration shall direct the AAA to so advise the parties. The arbitrator shall set the date and time and the AAA shall notify the parties. Any party who so desires may be present at such an inspection or investigation. In the event that one or all parties are not present at the inspection or investigation, the arbitrator shall make an oral or written report to the parties and afford them an opportunity to comment.

## R-37. Interim Measures

(a) The arbitrator may take whatever interim measures he or she deems necessary, including injunctive relief and measures for the protection or conservation of property and disposition of perishable goods.

(b) Such interim measures may take the form of an interim award, and the arbitrator may require security for the costs of such measures.

(c) A request for interim measures addressed by a party to a judicial authority shall not be deemed incompatible with the agreement to arbitrate or a waiver of the right to arbitrate.

## R-38. Emergency Measures of Protection

(a) Unless the parties agree otherwise, the provisions of this rule shall apply to arbitrations conducted under arbitration clauses or agreements entered on or after October 1, 2013.

(b) A party in need of emergency relief prior to the constitution of the panel shall notify the AAA and all other parties in writing of the nature of the relief sought and the reasons why such relief is required on an emergency basis. The application shall also set forth the reasons why the party is entitled to such relief. Such notice may be given by facsimile or e-mail or other reliable means, but must include a statement certifying that all other parties have been notified or an explanation of the steps taken in good faith to notify other parties.

(c) Within one business day of receipt of notice as provided in section (b), the AAA shall appoint a single emergency arbitrator designated to rule on emergency applications. The emergency arbitrator shall immediately disclose any circumstance likely, on the basis of the facts disclosed on the application, to affect such arbitrator's impartiality or independence. Any challenge to the appointment of the emergency arbitrator must be made within one business day of the communication by the AAA to the parties of the appointment of the emergency arbitrator and the circumstances disclosed.

(d) The emergency arbitrator shall as soon as possible, but in any event within two business days of appointment, establish a schedule for consideration of the application for emergency relief. Such a schedule shall provide a reasonable opportunity to all

parties to be heard, but may provide for proceeding by telephone or video conference or on written submissions as alternatives to a formal hearing. The emergency arbitrator shall have the authority vested in the tribunal under Rule 7, including the authority to rule on her/his own jurisdiction, and shall resolve any disputes over the applicability of this Rule 38.

**(e)** If after consideration the emergency arbitrator is satisfied that the party seeking the emergency relief has shown that immediate and irreparable loss or damage shall result in the absence of emergency relief, and that such party is entitled to such relief, the emergency arbitrator may enter an interim order or award granting the relief and stating the reason therefore.

**(f)** Any application to modify an interim award of emergency relief must be based on changed circumstances and may be made to the emergency arbitrator until the panel is constituted; thereafter such a request shall be addressed to the panel. The emergency arbitrator shall have no further power to act after the panel is constituted unless the parties agree that the emergency arbitrator is named as a member of the panel.

**(g)** Any interim award of emergency relief may be conditioned on provision by the party seeking such relief for appropriate security.

**(h)** A request for interim measures addressed by a party to a judicial authority shall not be deemed incompatible with this rule, the agreement to arbitrate or a waiver of the right to arbitrate. If the AAA is directed by a judicial authority to nominate a special master to consider and report on an application for emergency relief, the AAA shall proceed as provided in this rule and the references to the emergency arbitrator shall be read to mean the special master, except that the special master shall issue a report rather than an interim award.

**(i)** The costs associated with applications for emergency relief shall initially be apportioned by the emergency arbitrator or special master, subject to the power of the tribunal to determine finally the apportionment of such costs.

## R-39. Closing of Hearing

**(a)** The arbitrator shall specifically inquire of all parties whether they have any further proofs to offer or witnesses to be heard. Upon receiving negative replies or if satisfied that the record is complete, the arbitrator shall declare the hearing closed.

**(b)** If documents or responses are to be filed as provided in Rule R-35, or if briefs are to be filed, the hearing shall be declared closed as of the final date set by the arbitrator for the receipt of briefs.  If no documents, responses, or briefs are to be filed, the arbitrator shall declare the hearings closed as of the date of the last hearing (including telephonic hearings). If the case was heard without any oral hearings, the arbitrator shall close the hearings upon the due date established for receipt of the final submission.

**(c)** The time limit within which the arbitrator is required to make the award shall commence, in the absence of other agreements by the parties, upon the closing of the hearing. The AAA may extend the time limit for rendering of the award only in unusual and extreme circumstances.