UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

TICKETNETWORK, INC.,
            Plaintiff,

v.                                              CASE NO. 3:15-cv-237 (VAB)

YVES DARBOUZE
*doing business as*
CHARGED.FM,
            Defendant.

### RULING ON PLAINTIFF'S MOTION TO ADD PARTY
### AND DEFENDANTS' MOTION TO DISMISS

Plaintiff, TicketNetwork, Inc. ("TicketNetwork"), has filed this case against

"Yves Darbouze *doing business as* Charged.fm" ("Yves Darbouze" or "Mr.

Darbouze") alleging that Mr. Darbouze owes TicketNetwork $2,163,958.85.

Notice of Removal 14, Compl., ECF No. 1.  In the Complaint, initially filed in

Connecticut Superior Court, TicketNetwork claims that Mr. Darbouze owes this

sum because Charged.fm breached a contract that he signed on its behalf.  *Id.*

TicketNetwork takes the position that Charged.fm is not a legal entity and has no

relationship with any corporation or other legal entity; thus, Mr. Darbouze is

personally responsible for the debt.[1]  Opp. Br. to Mot. to Dismiss 5, ECF No. 24.

The contract at issue in this case also contains an arbitration clause, under which

TicketNetwork has commenced an arbitration action against Mr. Darbouze to

recover the sum allegedly owed.  Mot. to Add Plot Commerce, Ex. A,

TicketNetwork Data Sharing Agreement for Mercury Web Services, ECF No. 17-

---

[1] It alleges that it "has reason to believe" that Charged.fm may be a trade name for a
Nevada corporation, Plot Commerce, but that discovery is required to establish this
connection.  Notice of Removal 14, Compl. ¶2, ECF No. 1.

1

1; Mot. to Dismiss Br., Ex. A, American Arbitration Association ("AAA"), Online

Filing Acknowledgement, ECF No. 20.

In this action, TicketNetwork seeks a prejudgment remedy[2], and other

related relief, to assist with the arbitration it has commenced.  Before the Court

can examine these requests, it must first address the structure of the case by

deciding TicketNetwork's Motion to Cite in Non-Party Plot Commerce, ECF No.

17, and Mr. Darbouze's Motion to Dismiss, ECF No. 19.  First, TicketNetwork

filed a motion to add Plot Commerce to this litigation under Federal Rule of Civil

Procedure 20, claiming that the resolution of this case requires the addition of

this entity as a party.[3]  Next, Mr. Darbouze asked the Court to dismiss the case

for lack of personal jurisdiction over him and for failure to state a claim under

Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6) respectively.

In his motion to dismiss, Mr. Darbouze argues that TicketNetwork has

sued the wrong party and that Plot Commerce, a Nevada corporation that uses

the alias Charged.fm, is the proper defendant.  The motion also asks that the

---

[2] TicketNetwork seeks a prejudgment remedy under Connecticut law to secure Defendant's assets so that they are readily available to satisfy any arbitration award that the AAA may issue.  *See* Conn. Gen. Stat. §52-422; *see also* Conn. Gen. Stat. §52-278a *et seq.*. Federal Rule of Civil Procedure 64 provides that "every remedy is available that, under the law of the state where the court is located, provides for seizing a person or property to secure satisfaction of the potential judgment."  Accordingly, federal courts borrow substantive state laws on provisional remedies, including the prejudgment remedy at issue here.  *Metal Mgmt., Inc. v. Schiavone,* 514 F. Supp.2d 227, 234 (D. Conn. 2007) (citation omitted).

[3] TicketNetwork initially filed this motion in Connecticut Superior Court on February 19, 2015, the day the case was removed.  Suppl. Notice of Pending Motions, ECF No. 16. Accordingly, the motion itself cites to various sections of the Connecticut Practice Book, which governs procedure in state court.  However, the Federal Rules of Civil Procedure govern the procedural conduct of this action, because it is now in federal court.  *See Metal Mgmt., Inc. v. Schiavone,* 514 F. Supp.2d 227, 234 (D. Conn. 2007) (citation omitted).  In its Reply Brief, TicketNetwork cites to Federal Rule of Civil Procedure 20. Reply Br. 2-3, ECF No. 26.  Thus, the Court will construe TicketNetwork's request to add a party under Rule 20.

Court "enjoin" the arbitration that TicketNetwork commenced against Mr. Darbouze, because he is not the proper party to the arbitration and is not individually liable to TicketNetwork under the contract.

For the reasons that follow, the Court **GRANTS** the Motion to Add Plot Commerce as a Defendant, ECF No. 17.  It also **GRANTS** the Motion to Dismiss, ECF No. 19.  Accordingly, the Court dismisses Mr. Darbouze from the lawsuit and hereby enjoins TicketNetwork from continuing its arbitration against Mr. Darbouze in his individual capacity.

## I.    FACTUAL ALLEGATIONS

TicketNetwork alleges that it is a software company that "provides, among other things, an online secondary marketplace for tickets to live entertainment events."  Notice of Removal 14, Compl. ¶3, ECF No. 1.  It claims that, on April 28, 2014, it entered into the "TicketNetwork Data Sharing Agreement for Mercury Web Services with Charged.fm."  *Id.* ¶4.  It has attached the agreement to several of the currently pending motions.  *See e.g.,* Mot. to Add Plot Commerce, Ex. A, TicketNetwork Data Sharing Agreement for Mercury Web Services, ECF No. 17-1.[4]

Mr. Darbouze signed this agreement as the "CEO" of Charged.fm and held himself out to be the "main point[ ] of contact" for Charged.fm under the contract.  *Id.*  Charged.fm is defined in the contract as "a Nevada [blank]" (meaning the name of the legal entity is not provided but simply left blank), with

---

[4] The Court may consider the contract at the motion to dismiss stage, because it is integral to the Complaint in that TicketNetwork relied heavily on its terms and effect in drafting its allegations.  *See Chambers v. Time Warner, Inc.,* 282 F.3d 147, 153-54 (2d Cir. 2002) (considering contracts in evaluating a motion to dismiss where it was integral to the plaintiff's complaint).

its "principal place of business" at a location in Brooklyn, New York.  *Id.* It is not

otherwise defined, as a legal entity or individual, and the words "Plot Commerce"

do not appear anywhere in the document.  *Id.*

TicketNetwork alleges that the agreement provides Charged.fm with

access to its online database of tickets offered by ticket brokers so that

Charged.fm may, in turn, offer access to its customers.  Notice of Removal 14,

Compl. ¶¶5, 7, ECF No. 1.  It claims that, in exchange for access, Charged.fm is

required under the agreement to pay TicketNetwork the amount sought by the

broker for any tickets purchased by its customers, plus an additional 3% fee.  *Id.*

¶¶6, 7.  It contends that Charged.fm profits from this arrangement by charging its

customers a mark-up or premium.  *Id.*

TicketNetwork alleges that, as of the filing of its Complaint in January

2015, Charged.fm had failed to pay four invoices, totaling $2,163,958.85.  *Id.* ¶9.

It alleges that Charged.fm's failure to pay this sum constitutes a breach of the

agreement.  *Id.* ¶14.  TicketNetwork also claims that it has paid the brokers for

the tickets purchased through Charged.fm.  *Id.* ¶10.

As mentioned briefly above, the contract contains an arbitration clause

which provides that "[a]ny controversy or claim arising out of or relating to this

contract, or any alleged breach thereof, shall be resolved through binding

arbitration in [ ]Hartford County, Connecticut, and administered by the [AAA]."

Mot. To Add Plot Commerce, Ex. A, TicketNetwork Data Sharing Agreement for

Mercury Web Services, ECF No. 17-1.  Under this clause, in January 2015,

TicketNetwork commenced an arbitration action against Mr. Darbouze in both his

individual capacity and "doing business as Charged.fm."  Mot. to Dismiss Br., Ex. A, AAA, Online Filing Acknowledgement, ECF No. 20.  TicketNetwork also indicated that it has added Plot Commerce as a party to the arbitration as a respondent after the initial filing.  Opp. Br. 9, ECF No. 24.

The agreement indicates that Connecticut law applies.  Mot. To Add Plot Commerce, Ex. A, TicketNetwork Data Sharing Agreement for Mercury Web Services, ECF No. 17-1.  It also provides, in a forum selection clause, that the "the sole location and venue for any litigation" arising under the contract "shall be an appropriate federal or state court located in Hartford County, Connecticut."  *Id.*

TicketNetwork initially filed its Complaint in Connecticut Superior Court.  Mr. Darbouze then removed the case to federal court on diversity grounds in February 2015.  Notice of Removal ¶¶4-5, ECF No. 1.

II.     **MOTION TO ADD DEFENDANT (ECF NO. 17)**

TicketNetwork seeks to add Plot Commerce as a party to this case, because Mr. Darbouze has indicated that Charged.fm, the entity that entered into the contract with TicketNetwork, is an alias of Plot Commerce.  Memo. In Support of Mot. To Add Plot Commerce 2, ECF No. 17-1.  It argues that Plot Commerce's addition is necessary to fully adjudicate any "setoffs, defenses or counterclaims" related to the prejudgment remedy it seeks.  *Id.*   It also indicates that a revised complaint will include a breach of contract claim against Plot Commerce.  Reply Br. 1-2, 4, ECF No. 26.[5]  Mr. Darbouze opposes this motion because, he argues,

---

[5] As mentioned above, the agreement provides that claims arising from it, which would include the breach of contract claim against Plot Commerce that TicketNetwork proposes to add, are to be arbitrated.  At this time, neither side has sought to compel arbitration and dismiss the breach of contract aspect of the case.  Accordingly, the Court

TicketNetwork fails to set out specific factual allegations as to why Plot Commerce should be added.  Opp. Br. 3, ECF No. 22.  He also argues that he will be prejudiced by its addition to the lawsuit, because he should not be a party to the lawsuit.  *Id.* at 4.

TicketNetwork's motion is governed by Rules 20 and 21, regarding the addition of parties to an action, as well as Rule 15 and the standards governing amendment of pleadings articulated by *Foman v. Davis,* 371 U.S. 178 (1962). *See United States v. Hansel,* 999 F. Supp. 694, 697 (N.D.N.Y. 1998) (noting that Rule 15 generally governs the amendment of complaints but that in the case of proposed amendments where new defendants are to be added, Rule 21 governs) (citations omitted); *Lego A/S v. Best-Lock Constr. Toys, Inc.,* 886 F. Supp.2d 65, 71-72 (D. Conn. 2012) (applying the *Foman* standard to a motion to amend the complaint to add a new defendant).

Rule 15(a) provides that the Court "should freely give leave [to amend] when justice so requires."  Fed. R. Civ. P. 15(a)(2).  *Foman* indicated that, as Rule 15 requires, motions to amend should be granted "[i]n the absence of any

---

will not do so *sua sponte.  See PRL USA Hldgs., Inc. v. United States Polo Ass'n, Inc.,* No. 14-cv-764(RJS), 2015 WL 1442487, at *3 n.2 (S.D.N.Y. Mar. 27, 2015) (declining to enforce an arbitration clause *sua sponte,* because it would be inappropriate where neither party explicitly requested its enforcement and the issue had not been fully briefed) (citation omitted); *see also CPL, Inc. v. Fragchem Corp.,* 512 F.3d 389, 392-93 (7th Cir. 2008) (holding that the district court erred in dismissing a lawsuit *sua sponte* for lack of venue based on an arbitration clause, because an objection to venue and a contractual right, like an arbitration clause, can be waived or forfeited).  That said, section 52-422 authorizes courts to intervene in an arbitration proceeding in a very limited way, to provide provisional relief "as may be necessary to protect the rights of the parties pending the rendering of" an arbitration award.  Conn. Gen. Stat. §52-422. Under this section, "[t]he fact that an applicant for relief [ ] is a party to a pending arbitration is the essential element conferring jurisdiction on the courts."  *Metal Mgmt., Inc. v. Schiavone,* 514 F. Supp.2d 227, 233 (D. Conn. 2007) (citing *Goodson v. State,* 232 Conn. 175, 180 (1995)).

apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." 371 U.S. at 182; *see also Burch v. Pioneer Credit Recovery, Inc.,* 551 F.3d 122, 126 (2d Cir. 2008) ("[M]otions to amend should generally be denied in instances of futility, undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, or undue prejudice to the non-moving party.") (citation omitted). Providing leave to amend a complaint is within the discretion of the district court. *Foman,* 371 U.S. at 182; *Lego A/S,* 886 F. Supp.2d at 71 (noting that Rules 15(a), 20(a) and 21 "all leave the decision whether to permit or deny amendment to the district court's discretion") (quoting *Oneida Indian Nation of N.Y. State v. Cnty. Of Oneida,* 199 F.R.D. 61, 72 (N.D.N.Y. 2000)).

Rule 21 provides that a party may be added "at any stage of the action and on such terms as are just." Fed. R. Civ. P. 21. "Since Rule 21 does not provide any standards by which district courts can determine if parties are misjoined, courts have looked to Rule 20 for guidance." *Acevedo v. Allsup's Convenience Stores, Inc.,* 600 F.3d 516, 521 (5th Cir. 2010) (citation omitted). Rule 20 provides for "permissive joinder" of parties and indicates that defendants may be joined if "any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction [or] occurrence [ ]; and [ ] any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2). This provision is "very broad and

subject to the court's discretion to prevent delay or prejudice." *Landmark Dev. Grp. v. JEG Hldgs., Inc.,* 185 F.R.D. 126, 128 (D. Conn. 1999) (citation omitted).

The Court finds that TicketNetwork has shown that it would be appropriate to add Plot Commerce under Rules 20 and 21.  For reasons explained more fully below, as a matter of law, Charged.fm is Plot Commerce.  Thus, the breach of contract case against Charged.fm is identical to the case against Plot Commerce.  The case against Plot Commerce arises out of the same transaction and presents largely the same legal and factual questions.  Accordingly, TicketNetwork's motion, ECF No. 17, is **GRANTED**, and the Court orders that Plot Commerce be added as a party to this action.

III.   **MOTION TO DISMISS (ECF NO. 19)**

Mr. Darbouze has moved to dismiss the case against him for two reasons.[6]  First, he argues that this Court does not have personal jurisdiction over him, because the fiduciary shield doctrine[7] applies and because Mr. Darbouze has insufficient contacts with the state of Connecticut.  Mot. to Dismiss Br. 13-16, ECF No. 20 (citing Fed. R. Civ. P. 12(b)(2)).  Second, he has moved to

---

[6] In naming Mr. Darbouze "doing business as" Charged.fm, TicketNetwork has named Mr. Darbouze in his individual capacity.  *See Trustees of the Mason Tenders, Dist. Council Welfare Fund, Pension Fund, Annuity Fund and Training Prog. Fund v. Faulkner,* 484 F. Supp.2d 254, 257 (S.D.N.Y. 2007) (noting that the designation "doing business as" "'is merely descriptive of the person or corporation who does business under some other name.") (citation and internal quotation marks omitted); *accord Johnson v. Dollar Gen. Corp.,* No. 2:06-CV-173, 2008 WL 2781660, at *4 n.3 (E.D. Tenn. July 14, 2008) (noting that the "doing business as" notation in a case's caption is "not legally significant" and that the entity preceding the "d/b/a" was the true party to the action).

[7] Fiduciary shield doctrine precludes a corporate employee from being subject "personally to suit in a foreign jurisdiction when his only contacts with that jurisdiction have been undertaken on behalf of his corporate employer."  *See Under Par Assocs., L.L.C. v. Wash Depot A., Inc.,* 793 A.2d 300, 304 (Conn. Super. Ct. 2001) (citation and internal quotation marks omitted).

dismiss the case under Rule 12(b)(6), arguing that TicketNetwork has failed to state a claim against him because he did not sign the agreement that forms the basis for the parties' dispute in his individual capacity. *Id.* at 17-19 (citing Fed. R. Civ. P. 12(b)(6)). He also requests that the Court "enjoin" the arbitration that TicketNetwork filed against Mr. Darbouze under the contract's arbitration clause, because Mr. Darbouze did not agree to arbitrate in his personal capacity. *Id.* at 19-20.

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). A claim is facially plausible if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In other words, to state a plausible claim, a plaintiff's complaint must have "enough fact to raise a reasonable expectation that discovery will reveal evidence" supporting the claim. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).

Although "detailed factual allegations" are not required, a complaint must offer more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement." *Id.* at 555, 557 In determining whether the plaintiff has met the Rule 12(b)(6) standard, the Court must accept the allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007); *Newman & Schwartz v.*

*Asplundh Tree Expert Co., Inc.,* 102 F.3d 660, 662 (2d Cir. 1996) (citations omitted).

Similarly, to survive a motion to dismiss for lack of personal jurisdiction made under Rule 12(b)(2), a plaintiff must allege facts that, if true, would "suffice to establish jurisdiction over the defendant." *See Metro. Life Ins. Co. v. Robertson-Ceco Corp.,* 84 F.3d 560, 567 (2d Cir. 1996) (citation and internal quotation marks omitted).

In considering a motion to dismiss, "a district court must limit itself to facts stated in the complaint or in documents attached to the complaint as exhibits or incorporated in the complaint by reference." *Newman & Schwartz,* 102 F.3d at 662 (citation and internal quotation marks omitted). It also may take judicial notice of matters of public record, including documents filed with public bodies, such as articles of incorporation. *See Kramer v. Time Warner, Inc.,* 937 F.2d 767, 774 (2d Cir. 1991) (taking judicial notice of contents of corporate filings with the S.E.C.); *Banks v. Consumer Home Mortg.,* No. 01-CV-8058, 2003 WL 21251584, at *6 n.7 (E.D.N.Y. Mar. 28, 2003) (taking judicial notice of public record on file with Secretary of State for Georgia); *see also AW Indus., Inc. v. Sleepingwell Mattress Inc.,* No. 10-cv-04439(NGG)(RER), 2011 WL 4404029, at *4 (E.D.N.Y. Aug. 31, 2011) (noting that the Court can take judicial notice of certificates of amendment and incorporation to analyze the true name of a legal entity in resolving a motion to dismiss), *Report and Recommendation adopted by* 2011 WL 4406329 (E.D.N.Y. Sept. 21, 2011).

A preliminary question that is potentially dispositive of both the personal

jurisdiction and Rule 12(b)(6) arguments is the identity of the signatory to the

contract underlying this action.  If Mr. Darbouze signed the contract in his

individual capacity, he has consented to jurisdiction of the Connecticut courts by

agreeing to the forum selection clause.  *See D.H. Blair & Co., Inc. v. Gottdiener,*

462 F.3d 95, 103 (2d Cir. 2006) (parties may consent to personal jurisdiction

through forum selection clauses in contracts) (citation omitted); *Bricken v.*

*Bergtholdt,* No. 11cv1992(WWE), 2012 WL 2958217, at *1 (D. Conn. July 19,

2012) (finding that "[w]here an agreement contains a valid and enforceable forum

selection clause, it is not necessary to analyze jurisdiction under the state long-

arm statutes or federal constitutional due process" because "[p]arties may

consent to personal jurisdiction through forum-selection clauses.") (citations

omitted).  If Mr. Darbouze signed the contract in his individual capacity, he also is

the proper party to this action and his arguments under Rule 12(b)(6) fail.  Thus,

the Court examines this question first.

Under Connecticut law, to avoid personal liability on a contract he signs on

another's behalf, an agent must both disclose the fact that he is acting in a

representative capacity and the identity of his principal.  *See Rich-Taubman*

*Assocs. V. Comm'r of Revenue Servs.,* 236 Conn. 613, 619 (1996) ("To avoid

personal liability, an agent must disclose to the party with whom he deals both

the fact that he is acting in a representative capacity and the identity of his

principal.") (citations omitted); *New England Whalers Hockey Club v. Nair,* 474

A.2d 810, 813 (Conn. App. Ct. 1984) ("To avoid personal liability, it is the duty of

an agent to disclose both the fact that he is acting in a representative capacity and the identity of his principal, since the party with whom he deals is not required to discover or to make inquiries to discovery these facts.") (citations omitted); *LucidRisk, LLC v. Ogden,* 615 F. Supp.2d 1, 7 (D. Conn. 2009) (same) (citations omitted); *see also Robert T. Reynolds Assocs., Inc. v. Asbeck,* 580 A.2d 533, 536 (Conn. App. Ct. 1990) ("[W]here the agent contracts as ostensible principal, regardless of his intention and notwithstanding his lack of personal interest in the consideration, he will be personally liable on the contract as if he were the principal.") (internal quotation marks and citation omitted).

Based on the Court's review of the contract, at the time Mr. Darbouze signed it, he was representing some kind of principal or third party.  The agreement itself indicates that it is between Charged.fm and TicketNetwork.  In the signature line as well, Mr. Darbouze's name is listed as the CEO of the "Mercury Web Service User," which according to the agreement was Charged.fm.  *See LucidRisk, LLC,* 615 F. Supp.2d at 7 (finding that a signatory made clear that he was signing on behalf of a principal under Connecticut law where he signed the agreement as the "COO" and the agreement referred to the name of an entity clearly in the signature line, despite the fact that the name of the entity did not include words indicating it was a legal entity, such as LLC or Co.); *Colonial Properties, Inc. v. Santagata,* No. CV075011750S, 2009 WL 455729, at *3 (Conn. Super. Ct. Jan. 22, 2009) (finding that where an individual wrote "member" in signing a contract and testified that he was signing in a representative capacity, he signed on behalf of the limited liability corporation).

12

Thus, the remaining and dispositive question is whether Mr. Darbouze sufficiently

disclosed the identity of the principal on behalf of which he worked.

TicketNetwork argues that Mr. Darbouze is personally liable on the

contract he signed, because the principal he disclosed in the contract,

Charged.fm, was not a legal entity that shielded him from personal liability.  Opp.

Br. 5-6, ECF No. 24.  The Court disagrees.  Charged.fm was registered as an

assumed name of Plot Commerce in New York, under General Business Law

section 130, before the contract was signed, which Mr. Darbouze has shown by

attaching copies of the registration to his Motion to Dismiss.  Mot. to Dismiss Br.,

Ward Decl., Exs. C-D, ECF No. 20-1.[8]  New York General Business Law section

130 prohibits corporations from doing business in New York under an assumed

name, unless that name is registered with the secretary of state.  N.Y. General

Business Law §130(1)(b).

Use of a so-called "trade name" does not create a separate legal entity.

*See Simpson v. D&L Tractor Trailer Sch.,* No. CV054008081S, 2007 WL

4733078, at *1-2 (Conn. Super. Ct. Dec. 19, 2007) (citing *Bauer v. Pounds,* 762

A.2d 499, 503 (Conn. App. Ct. 2000)); *Pacheco v. Joseph McMahon Corp.,* 698

F. Supp.2d 291, 295 (D. Conn. 2010) ("[T]he trade name of a legal entity does

not have a separate legal existence.") (citing *America's Wholesale Lender v.*

*Pagano,* 87 Conn. App. 474, 477 (Conn. App. Ct. 2005)); *Trustees of the Mason*

*Tenders, Dist. Council Welfare Fund, Pension Fund, Annuity Fund and Training*

*Prog. Fund v. Faulkner,* 484 F. Supp.2d 254, 257 (S.D.N.Y. 2007) ("'Doing

---

[8] As discussed above, because these are public filings, the Court may take judicial notice of them.

business under another name does not create an entity [distinct] from the person operating the business.'") (citation omitted) (alteration in original).  Instead, the trade name user is the same entity as its owner.  *See id.*

As a matter of law, because Charged.fm is registered as an alias of Plot Commerce, Charged.fm is Plot Commerce.  *See Simpson,* 2007 WL 4733078, at *2 ("[W]hile a trade name does not create a separate legal entity, the entity doing business under the trade name, whether corporation or individual, remains liable for all of its obligations… the owners of the trade name and the trade name entities [are] one and the same."); *Pacheco,* 698 F. Supp.2d at 295 ("'A fictitious or assumed business name, a trade name, is not a legal entity; rather it is merely a description of the person or corporation doing business under that name.'") (quoting *America's Wholesale Lender,* 87 Conn. App. at 477).

Registering an assumed name under Connecticut General Statute section 35-1 provides "constructive notice" of the true identity of that entity.  *Metro Bulletins Corp. v. Soboleski,* 30 Conn. App. 493, 500-501 (Conn. App. Ct. 1993) (finding that where a certificate of trade name was filed in Connecticut in accordance with Connecticut General Statute section 35-1 before the contract was signed, the signing party had constructive notice of the corporate principal's identity and, therefore, corporation's president was not individually liable under the contract) (citing Conn. Gen. Stat. §35-1), *cert. granted,* 225 Conn. 923 (1993) (appeal withdrawn).[9]  The question presented by this case, however, is a slightly

---

[9] Mr. Darbouze indicates that Plot Commerce was publicly registered as the owner of the domain name "Charged.fm."  Mot. to Dismiss Br., Ward Decl. Ex. B, ECF No. 20-1.  He also indicates that Charged.fm was a registered trademark of Plot Commerce with the United States Patent and Trademark Office before the contract was signed and attaches

different one—whether registering an assumed name in New York under General Business Law section 130 provides constructive notice of that name's user as a matter of Connecticut law.  Neither the parties nor the Court have found a Connecticut Supreme Court case that squarely addresses this precise question. Accordingly, the Court must determine how the Connecticut Supreme Court would do so.  *See Austen v. Catterton Partners V, LP,* 729 F. Supp. 2d 548, 553-54 (D. Conn. 2010) ("To the extent that the [state] case law is unsettled… the Court's [ ] role [as a federal court sitting in diversity] is to 'predict how the state's highest court would resolve' any identified uncertainty or ambiguity.") (quoting *Santalucia v. Sebright Transp., Inc.,* 232 F.3d 293, 297 (2d Cir. 2000)).

In *Metro Bulletins,* the Connecticut Appellate Court concluded that the purpose of section 35-1, its "specific mandates and substantial penalties [for non-compliance]," and "its parallels with real property recording and indexing provisions" indicated that the "statute was intended to provide constructive notice."  30 Conn. App. at 499-500.  There is no reason for this Court to conclude that the Connecticut Supreme Court would not look to the same factors the Appellate Court identified in *Metro Bulletins* in interpreting the impact of registration under New York's statute.

The Connecticut Supreme Court has indicated that section 35-1 was passed to "enable a person dealing with another, trading under a name not his

---

the trademark registration.  Mot. to Dismiss Br., Ward Decl. Ex. E, ECF No. 20-1. However, the purpose of these filings is not to provide notice to the public of the true identity of a party to a transaction, but rather to provide an enforceable interest in the domain name and a protection against infringement, respectively.  Thus, they are not relevant to the issue of constructive notice of the true identity of the signatory of a contract.  *See Metro Bulletins Corp.,* 30 Conn. App. at 500-501 (concluding the same regarding a trademark registration).

own, to know the man behind the name." *Id.* at 499 (quoting *DiBiase v. Garnsey,* 103 Conn. 21, 130 A. 81, 83 (1925)).  New York's statute has the same purpose. *See Cifone v. Andros Broadway, Inc.,* 836 N.Y.S. 2d 599, 600 (N.Y. App. Div. 2007) (noting that the purpose of General Business Law section 130, which requires the registration of assumed names, is to "'protect the public, to afford the public information as to the identity of the persons conducting the business, [and] to prevent deception and confusion.'") (citation omitted) (alteration in original).

The two laws also have very similar requirements.  Both laws provide that individuals or entities doing business in each state under an assumed name must publicly file a certificate identifying the true identity of the trade name user. *Compare* N.Y. General Business Law §130(1)(b) (providing no corporation may transact business under an assumed name unless it has filed a certificate with the office of the secretary of state) *with* Conn. Gen. Stat. §35-1(a) (prohibiting the conducting of business in Connecticut "under any assumed name" unless that name is registered with the town clerk in the town in which the business is to be conducted).  Both statutes require the public officials responsible for keeping the records to maintain an alphabetical index of the certificates.  *Compare* N.Y. General Business Law §§130(5)(a)(1), 130(5)(b)(1) (noting that "[t]he several county clerks of this state shall keep an alphabetical index of all certificates.") *with Metro Bulletins Corp.,* 30 Conn. App. at 500 (noting section 35-1 "include[s] the mandate that each town clerk create and maintain a dual indexing system, thus enabling the public to find either the owner of a particular trade name or the trade name of a particular person or entity.").

16

Both also indicate that the certificates are presumptive evidence of the facts they contain. *Compare* N.Y. General Business Law §130(6) (noting that "a copy of a certificate" filed under the statute's provisions and "duly certified to" by the relevant public official "shall be presumptive evidence in all courts of this state of the facts therein contained") *with* Conn. Gen. Stat. §35-1(a) (noting that certificates "certified by" the relevant town clerk are "presumptive evidence, in all courts in this state, of the facts contained in such certificate."). In both states, the failure to comply with the statutes results in substantial penalties. *Compare* N.Y. General Business Law §130(9) (noting that those "who knowingly fail[ ] to comply" with the statute "shall be guilty of a misdemeanor") *with* Conn. Gen. Stat. §35-1(a) (providing for penalties that include a fine of "not more than five hundred dollars" or a term of imprisonment of "not more than one year.").

Given the similarities between the New York and Connecticut statutes in both purpose and content, this Court concludes that the Connecticut Supreme Court would find that filings made in New York provide constructive notice of the relationship between an assumed name and its owner. TicketNetwork cites no Connecticut precedent indicating that the Connecticut Supreme Court would decide this issue differently from the Appellate Court's approach in *Metro Bulletins*.[10] Indeed, the Connecticut Supreme Court has held in other contexts

---

[10] TicketNetwork correctly points out that New York courts construing the New York statute would likely reach a different conclusion. Sur-Reply Br. 1-2, ECF No. 33-1 (citing *Horizon Hobby Distribs. v. Guerriero,* 161 Misc. 2d 221, 223 (N.Y. Sup. Ct. 1994) ("simply filing the certificate pursuant to N.Y. General Business Law §130 would be insufficient to place plaintiff on notice that Horizon Hobby was part of a corporation.")). However, TicketNetwork agreed in the contract at issue in this case that its agreement with Charged.fm would be governed by Connecticut law. Thus, the Court must analyze the question under Connecticut law.

that the filing of records publicly provides constructive notice of their contents to the world. *See e.g., Connecticut Nat'l. Bank v. Lorenzato,* 221 Conn. 77, 81-82 (1992) ("We have consistently held that the recordation of a valid mortgage [in the town land records] gives constructive notice to third persons if the record sufficiently discloses the real nature of the transaction.") (collecting cases); *cf. Standard Acceptance Corp. v. Connor,* 127 Conn. 199, 201 (1940) (interpreting a statute requiring contracts of conditional sales be recorded and observing that "[w]e have [ ] repeatedly stated the purpose of the statute as being to protect those who, from the fact of possession and apparent ownership by the vendee, may be led to believe him to be the actual owner of property held by him under such contract, and that recording of the instrument is constructive notice to all the world of its contents, and therefore of the fact as to the true ownership of the property.") (citation omitted).

Because Charged.fm was the registered assumed name of a corporation, Plot Commerce, TicketNetwork had constructive notice that the principal with which it was dealing with was Plot Commerce.[11]  Accordingly, Mr. Darbouze cannot be held personally liable on the contract he signed, because he contracted on behalf of a disclosed corporation.  *See Rich-Taubman Assocs.,*

---

[11] Mr. Darbouze also indicates that when he signed the agreement he "always made it clear with TicketNetwork" that "it was conducting business with an entity that did business as 'Charged.fm,' and never in [his] individual capacity."  Mot. to Dismiss Br., Darbouze Decl. ¶12, ECF No. 20-1.  The Court cannot consider this declaration at this stage, but even if it could, this question of "actual notice" is a question of fact, which would require discovery. *See Conn. Limosine Serv., Inc. v. Powers,* 7 Conn. App. 398, 402 (Conn. App. Ct. 1986) (finding that whether the individually named defendant disclosed that she was signing a contract on behalf of a principal was a question of fact for the trial court) (citations omitted).  Because the Court is satisfied that TicketNetwork had constructive notice that Charged.fm was Plot Commerce, discovery on this question for the purposes of determining the true signatory to the contract is unnecessary.

236 Conn. at 619 ("'[U]nless otherwise agreed, a person making or purporting to make a contract with another as agent for a disclosed principal does not become a party to the contract.'") (quoting Restatement (Second) of Agency §320 (1958)).

Cases cited by TicketNetwork to the contrary are all distinguishable. While these cases do hold an individual liable when he signed a contract purportedly on behalf of a separate legal entity that did not actually exist, none of these cases involved a trade name registered as an official alias of a corporation or other legal entity in any state.  *See Robert T. Reynolds Assocs.,* 580 A.2d at 535-37 (finding that the defendant, who signed a contract on behalf of an unincorporated entity, was individually liable on the contract and noting that the defendant had not filed a certificate in Connecticut indicating that the unincorporated entity was a trade name affiliated with a corporation); *Conn. Limousine Serv., Inc. v. Powers,* 7 Conn. App. 398, 400-02 (Conn. App. Ct. 1986) (finding that the defendant, who signed a contract on behalf of an unincorporated entity, was individually liable on the contract and noting that the defendant who was doing business under the alias "Yale Co-op Travel Agency" did not sufficiently disclose to plaintiff that this alias was associated with a corporation and noting that "no public knowledge of the existence of the corporation… was adduced at trial to show that actual or constructive notice of the corporation was given to potential creditors such as the plaintiff"); *Nationwide Airlines Ltd. v. African Global, Ltd.,* No. 3:04 CV 00768 (MRK), 2007 U.S. Dist. LEXIS 10420, at *4, 6, 30-36 (D. Conn Feb. 14, 2007) (finding that Mr. Atkinson,

who signed a contract on behalf of an unincorporated entity, was individually liable on the contract and noting that he "acknowledged that he never registered [the unincorporated entity] as a trade name for himself or Atkinson Associates," a corporation).  Here, Charged.fm is a registered legal alias of Plot Commerce.

Because Mr. Darbouze did not sign this contract as an individual, he has no place in this lawsuit.  As a matter of law, he cannot be responsible for the breach of a contract to which he is not a party.  *See e.g., Marron and Sipe Bldg. and Contracting Corp. v. Flor,* 22 Conn. App. 689, 699 (Conn. App. Ct. 1990) (affirming directed verdicts in favor of corporate officers who signed a contract on behalf of a corporate entity, because they did not sign in their individual capacities and could not, therefore, be individually liable for breach of that contract).  Accordingly, Mr. Darbouze's Motion to Dismiss, ECF No. 19, is **GRANTED** under Rule 12(b)(6), and Mr. Darbouze is dismissed from the case.

This conclusion, regarding the true identity of the contract's signatory, also indicates that Mr. Darbouze did not agree to arbitrate any disputes arising out of the contract in his personal capacity.  "[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit."  *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.,* 363 U.S. 574, 582 (1960); *accord Sokol Hldgs., Inc. v. BMB Munal, Inc.,* 542 F.3d 354, 358 (2d Cir. 2008) ("It is black letter law that an obligation to arbitrate can be based only on consent.") (collecting cases); *A. Dubreuil & Sons, Inc. v. Lisbon,* 215 Conn. 604, 608 (1990) ("No one can be forced to arbitrate a contract dispute who has not previously agreed to do so.") (citation omitted).  The Court

has found that no contract at all exists between Mr. Darbouze, the individual, and TicketNetwork.  TicketNetwork also does not claim that Mr. Darbouze may be compelled to arbitrate as a non-signatory.  *See e.g., Conn. General Life Ins. Co. v. Houston Scheduling Servs., Inc.,* No. 3:12-cv-01456(MPS), 2013 WL 4647252, at *8-10 (D. Conn. Aug. 29, 2013) (identifying some circumstances in which a non-signatory to agreement with an arbitration clause can be required to arbitrate).  Thus, Mr. Darbouze cannot be required to submit to arbitration under the agreement between Charged.fm and TicketNetwork.

District courts have the power to enjoin arbitrations when they determine that parties did not agree to them.  *See In re Am. Express Fin. Advisors Securities Litig.,* 672 F.3d 113, 141 (2d Cir. 2011) ("If the parties to this appeal have not consented to arbitrate a claim, the district court was not powerless to prevent one party from foisting upon the other an arbitration process to which the first party had no contractual right."); *accord Societe Generale de Surveillance, S.A. v. Raytheon European Mgmt. & Sys. Co.,* 643 F.2d 863, 868 (1st Cir. 1981) ("[T]o enjoin a party from arbitrating where an agreement to arbitrate is absent is the concomitant of the power to compel arbitration where it is present.") (citation omitted). Because Mr. Darbouze did not agree to arbitrate any matters in his individual capacity with TicketNetwork, the arbitration action against him must be enjoined.  *See In re Lehman Bros. Securities and Erisa Litig.*, 706 F. Supp.2d 552, 561-62 (S.D.N.Y. 2010) (enjoining arbitration on claims that the parties did not agree to send to arbitration).  Mr. Darbouze's request to enjoin the currently pending arbitration as to himself only is, therefore, **GRANTED**.

IV.     **CONCLUSION**

For all of the foregoing reasons, TicketNetwork's Motion to Add Plot Commerce, ECF No. 17, as a defendant is **GRANTED**.  TicketNetwork is directed to serve Plot Commerce with an amended complaint **within thirty (30) days** of the date of this Order.  It also must file that same complaint with this Court **within thirty (30) days** of the date of this Order.  Failure to file and serve an amended complaint within the designated timeframe will result in dismissal of this case.

Mr. Darbouze's Motion to Dismiss, ECF No. 19, is also **GRANTED**.  Mr. Darbouze is hereby dismissed as a defendant from this lawsuit.  In addition, TicketNetwork is enjoined from further pursuing its arbitration action before the AAA against Mr. Darbouze and is directed to dismiss him from that action forthwith.


**SO ORDERED** this 22nd day of September 2015 at Bridgeport, Connecticut.


/s/ Victor A. Bolden
Victor A. Bolden
United States District Judge

22